# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JEFFREY ROGER OLIVE,            )
                                )
        Plaintiff,     )
                                )
v.                              )   Case No. CIV-19-005-KEW
                                )
COMMISSIONER OF SOCIAL          )
SECURITY ADMINISTRATION,        )
                                )
        Defendant.     )

**OPINION AND ORDER**

Plaintiff Jeffrey Roger Olive (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked

in the past as a glazier helper, construction laborer, and millwright. Claimant alleges an inability to work beginning November 15, 2014 due to limitations resulting from coronary heart disease.

**Procedural History**

On March 23, 2016, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for Supplemental Security Income under Title XVI (42 U.S.C. § 1381 *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On February 23, 2018, Administrative Law Judge ("ALJ") James Stewart conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On March 22, 2018, the ALJ issued an unfavorable decision. On November 1, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity

4

("RFC") to perform sedentary work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to develop the record; (2) failing to properly consider the medical evidence and opinions; (3) failing to include the effects of all of Claimant's impairments in the hypothetical question posed to the vocational expert; and (4) failing to perform a proper credibility determination.

## Duty to Develop the Record

In his decision, the ALJ determined Claimant suffered from the severe impairments of cardiovascular disease (ischemic heart disease); status post left knee surgery; obesity; hyperlipidemia; hypertension; and depression. (Tr. 15). The ALJ concluded Claimant could perform sedentary work except that Claimant could not climb ladders, ropes, scaffolds, ramps, or stairs. Claimant could stoop, crouch, crawl, kneel, and balance occasionally. Handling and fingering could be done frequently. Claimant could not be exposed to elevated levels of fumes, dust, gasses, odors, poor ventilation, or other respiratory irritants. The ALJ defined "elevated level" as concentrations in excess of that normally found in office buildings or light manufacturing facilities. No

exposure to unprotected heights, open flames, dangerous machinery or equipment, or hazardous conditions. The ALJ noted that all moving machinery is not dangerous – such as machinery where moving parts are shielded). Due to mental impairments, the ALJ determined Claimant could understand, remember, and carry out simple or intermediate level instructions, and perform simple and some tasks of intermediate level difficulty under routine supervision, such that he is capable of doing simple or semi-skilled work. Claimant could relate to supervisors and co-workers on a superficial and work-related basis and could adapt to a work situation. (Tr. 19).

After consulting with a vocational expert, the ALJ concluded Claimant was capable of performing the representative jobs of document preparer, touch up screener, and semi-conductor bonder, all of which were found to exist in sufficient numbers in the national economy. (Tr. 26). As a result, the ALJ concluded Claimant was not under a disability from November 15, 2014 through the date of the decision. (Tr. 27).

Claimant contends the ALJ failed to properly develop the record by failing to order a mental consultative examination in order to ascertain the extent and effect of his depression upon

6

his RFC. Claimant states that his counsel requested a consultative examiner be retained but the ALJ erroneously stated that one was already in the record. (Tr. 95). It is not expressly clear that this request pertained to a mental health consultative examiner as other consultative examinations appeared in the record – Dr. Chris Sudduth, for one.

Somewhat curious is the position that Defendant takes in regard to the ALJ's assessment of Claimant's depression as a severe impairment. Defendant appears to argue that the ALJ was magnanimous in his assessment and imposition of mental limitations in the RFC based upon his severe impairment finding without medical evidence to support such a finding.

The source for the depression diagnosis appears in the record of Dr. Jonathan Clark in October of 2016. Dr. Clark diagnosed Claimant with moderate depression and prescribed Zoloft. (Tr. 547-48). No assessment appears in this medical record to explain the basis for the diagnosis. The next reference to a depression diagnosis appears, again, in the record of Dr. Clark in August of 2017. (Tr. 596). No explanation for the diagnosis is given. The record from Dr. Clark in November of 2017 provides the most information for the depression diagnosis. Dr. Clark states that

7

Claimant "presents with a history of moderate depression. This is a routine follow-up. The diagnosis of depression was made 2 years ago. Presently, he feels a mild degree of depression. Current medications include Zoloft. Relates he has been staying busy and doing well as far as depression goes." (Tr. 598).

To the extent the ALJ's finding of severity requires support, this finding by Dr. Clark, though scant, provides "some medical evidence" to support the RFC limitations imposed by the ALJ. Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001). As for the requirement for the ALJ to employ a consultative mental health professional, generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining

8

pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source;

9

or

> (5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination exists in the record. The ALJ did not violate his duty to develop the record by not ordering further mental health evaluations. Dr. Clark's records, to the extent they offer any explanation for his moderate depression diagnosis, indicate that the condition was diagnosed based upon Claimant's subjective statements and that even those statements indicate the condition was improving. Appointing a consultative examiner is not justified under these circumstances.

Claimant also contends the ALJ should have included a limitation in contact with the general public since the ALJ noted the depression condition caused a mild limitation in the interaction with others. (Tr. 17). Nothing in the record supports a further limitation in Claimant's contact with the general public.

Claimant asserts that the ALJ's finding of moderate limitation in concentration, persistence, or pace in the paragraph "B" criteria at step three should translate into a finding of

limitation at step four and five. (Tr. 18). This Court rejects this notion as it is unsupported by the regulations and the case authority in this Circuit. The social security ruling on assessing a claimant's RFC cautions that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' ... criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Soc. Sec. R. 96-8p. The Tenth Circuit has specifically found that the failure to include a moderate limitation in social functioning, for example, in the RFC based solely upon the finding at step three is not error. Beasley v. Colvin, 520 Fed. Appx. 748, 754 (10th Cir. 2013).

Claimant contends the ALJ "improperly minimized" his depression because he did not seek psychological treatment from a mental health professional. The ALJ's generous imposition of mental limitations based upon the scant medical record cannot be characterized as "minimizing" the condition. For whatever reason, the ALJ found the condition to be a severe impairment and imposed considerable limitations in the RFC based on that impairment. No further limitation is supported by the record.

Claimant asserts that the hypothetical question posed to the

vocational expert was flawed because it did not include a limitation for decreased visual acuity, which the ALJ found to be non-severe. (Tr. 15). Claimant was found to have 20/70 vision acuity bilaterally without corrective lenses. (Tr. 536). However, Claimant uses reading glasses. (Tr. 323, 348, 368). Claimant testified that his vision gets blurry and he can't focus on anything when he gets really nervous. (Tr. 111). This would appear to be less of a vision acuity problem and more of an anxiety issue. In any event, the medical record does not support further limitation in the RFC or hypothetical questioning of the vocational expert since in such questioning, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996).

Claimant also asserts the ALJ improperly weighed the opinion of his treating physician, Dr. Ramya Suryadevara. Dr. Suryadevara limited Claimant in a medical source statement to frequently lifting/carrying ten pounds and occasionally lifting/carrying 20 pounds, standing/walking up to two hours in an eight hour workday,

12

sitting for six hours in a workday, limited pushing/pulling with the upper and lower extremities, required bathroom breaks of 3-4 per workday, limited to performing work activities for two hours in a workday, be absent one day every month, limit postural actions to less than two hours in a workday, and considerable environmental restrictions. The physician based these restrictions upon Claimant's coronary artery disease with chronic angina. (Tr. 560-61). The ALJ found Dr. Suryadevara's opinion conflicted with the medical evidence and Claimant's own statements. The testing data found in Dr. Suryadevara's treatment records did not support the extreme findings of limitation proposed by the physician. (Tr. 24). As a result, the ALJ afforded the opinion "little weight." Id.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted).

13

"[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ provided the basis for rejecting Dr. Suryadevara's opinion with specific references to the medical record demonstrating the inconsistencies. No error is found in the analysis.

**Evaluation of Claimant's Subjective Complaints**

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage,

15

effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's subjective statements.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security

16

Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 31st day of March, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE